Harry Barrett *v.* The State.

1. Practice — Copy of Indictment. — In a felony case it is the duty of the clerk of the court to make a copy of the indictment and deliver it to the sheriff, with a writ commanding the sheriff to deliver the copy forthwith to the defendant, if in custody, or when arrested.   The importance of the writ is chiefly to furnish record evidence that the copy has been delivered to the defendant.   If the copy has in fact been delivered to the defendant, no right of his is prejudiced by neglect of the clerk to issue the writ.

2. SAME. — In the present case the clerk omitted to sign his certificate to the copy, but affixed to it the seal of the court, and neither the accuracy of the copy nor its delivery to the defendant is questioned. *Held,* an irregularity not material on appeal.

3. CONTINUANCE. — See this case as to the strictness necessary in a showing for a second continuance.

4. MURDER — CHARGE OF THE COURT. — The rulings in *Ainsworth* v. *The State,* 8 Texas Ct. App. 532, on the right of self-defence, referred to with approval.

APPEAL from the District Court of Erath. Tried below before the Hon. T. L. NUGENT.

The indictment charged the appellant with the murder of one A. T. Francis, on May 1, 1879, by shooting him with a pistol. The jury found the appellant guilty of murder in the second degree, and assessed his punishment at a term of sixty years in the penitentiary.

The homicide occurred in the town of Stephenville, county of Erath, late in the afternoon of May 1, 1879. Early in the morning of the same day, the deceased and the defendant, with others, went in a drinking saloon, when the defendant overheard and took exception to an insulting remark made about him by the deceased, who apologized, and they separated. The matter, however, seems to have rankled in the defendant's mind, and to have provoked altercations between him and the deceased on two or three occasions during the the course of the day. The defendant appears to have prepared himself for a conflict, and warned the deceased to arm himself, but the latter treated the matter in a light and derisive manner. He was a much larger and stouter man than the defendant. Both parties patronized the drinking-shops freely, and met for the last time close to the entrance of the same saloon at which their first altercation occurred in the morning. Francis asked Barrett what he had against him, and a quarrel ensued, in which the latter cursed and villified the former, who at last seized the defendant by the arms and pushed him backwards into the door of the saloon.

A by-stander called to them to stop, and Francis replied that he would, and immediately released his hold upon the defendant, and turned away from him and towards the doorway.  The defendant drew his pistol and fired upon Francis, who fell out of the door, dead.

*Martin & Neill,* for the appellant.

*Thomas Ball,* Assistant Attorney-General, for the State.

CLARK, J.   In view of the fact that appellant had been served with a certified copy of the indictment against him immediately after its presentment, as appears from the record, it does not become material to inquire into any supposed irregularity attending the service of another copy upon him at a subsequent term.  The mere fact that the clerk failed to issue a writ to the sheriff directing him to serve the defendant with such copy, which is the form prescribed by law for serving copies of indictments (Code Cr. Proc., art. 504), did not affect the substantial validity of the service, especially in view of the fact that, upon the case being called for trial at the same term of the court, no objection was interposed by the defendant to the service as made, and the cause was continued to a succeeding term upon his own application.  The omission to issue the writ affected the records of the court, and not the rights of the defendant; and the writ and return are important, chiefly as preserving record evidence that the law has been complied with.  The defendant received in person a certified copy of the indictment, and he could have received nothing more had the writ issued.

But even had the first service been notably defective, we are not sure that the defect was not entirely cured by the subsequent official action of the clerk and sheriff, or that the signature of the clerk at the end of the certificate was essential to the validity of the certificate accompanying the copy

of the indictment served upon the defendant a second time. There is no pretence that the copy received by the defendant was not an exact copy of the original, and the clerk testified that the copy and certificate were written by himself in person. The signature of the clerk appears in the body of the certificate, and the attesting seal of the court affixed and imparted to the instrument all the validity requisite under the law. The constitutional right of the prisoner "to demand the nature and cause of the accusation against him, and to have a copy thereof," has certainly not been denied or abridged, nor is it perceived how any prejudice could have enured to him by reason of the alleged defect, if defect it be.

The application of defendant for a continuance of the cause, which was a second application, when viewed in connection with the evidence upon the trial and the explanations of the presiding judge, was properly refused. The witness Brooks, it seems, was a transient person, with no local habitation in this State, and at the time of the application was beyond the limits of this State, and in the State of Tennessee. It is not shown, except by the general formal averment of a reasonable expectation of procuring the attendance of all the witnesses, and the supporting affidavit of third persons, that the witness was likely ever to return to this State, nor do the averments of the application negative the fact that the witness could have been attached and placed under bond prior to his departure from the State. There was no legal diligence shown as to the witness Henderson, nor does it appear that sufficient diligence was used as to the witness George. The application states that the defendant was not informed of the departure of George from Brown County, and his going to Dallas County, "until after the adjournment of the last August term of this court." Under the law, this must have occurred about the last of the third week in said month, and yet no process was applied for to be sent to Dallas County until the fourth day of Novem-

ber, 1879, a period of more than two months thereafter.
This was not diligence.    Apart from this, it seems that the
testimony of the witness was in effect similar to that of the
witness Crow, who testified upon the trial, and that another
witness (Wright) was present and not used by defendant,
although defendant's first application for continuance for the
absence of Wright had been granted at the previous term,
and that application had alleged that all the facts expected
to be proved by George could be proved by Wright.    In
view of these facts, it was not difficult for the court below,
in passing upon the motion for new trial, to determine that
the facts set forth in the application were not probably true.
Code Cr. Proc., art. 560, sect. 6.

Nor was the application materially strengthened by the
showing as to the defendant's physical condition when the
cause was called for trial.    The certificate of the two phy-
sicians, to the effect that they had on that day examined the
defendant and found some solidification of the lower left
lung, had no legal standing as evidence, and might be true,
as we doubt not it was ; and yet it is not made to appear
that this solidification was of so serious a character as to
prevent the defendant from attending upon the trial, and
rendering all necessary assistance to his counsel.

The charge of the court is not complained of in the
brief of appellant's counsel, and a critical examination
thereof has failed to reveal to us any error or substantial
inaccuracy.    No portion of the evidence rendered it neces-
sary for the court to instruct the jury as to the law of homi-
cide when inflicted for the purpose of preventing the offences
of murder or maiming (Penal Code, arts. 569, 570), and
the attack of the deceased upon the appellant, if any such
had in fact been made, must have been classed under a dif-
ferent category, which is provided for in a different statute.
Penal Code, art. 572.    The attack, if made, or if the jury
had so believed, must have been classed as an unlawful and
violent attack, other than one to murder or maim, in which

event it was proper to instruct the jury, as was done in this case, that all other means must have been resorted to by the assaulted party to avoid the threatened injury, except to retreat, before he was authorized to slay.   *Horbach* v. *The State*, 43 Texas, 242; *Ainsworth* v. *The State*, 8 Texas Ct. App. 532.

The substantial justice of the case seems to have been reached without any material departure from the forms of law, and the judgment is affirmed.

*Affirmed.*